Daniel L. DONLAN, Elliott A. Nirdlinger, Richard A. Young, William Koman, Samuel Seigle, general partner, on behalf of limited partnership, Carvel of Delight, Daniel Keromitis and Pauline Keromitis, his wife, and Melvin Hill

v.

Thomas CARVEL, Carvel Stores of New York, Inc., a corporation of the State of New York, Eagle Cone Corporation, a corporation of the State of New York, Maryland Baking Company, a Maryland corporation, et al.

Civ. No. 11694.

United States District Court
D. Maryland.

April 17, 1961.

Lawrence I. Weisman and Arnold Fleischmann, Baltimore, Md., for plaintiffs.

Pariser & Pariser, New York City, and David Gerber, Burke, Gerber & Wilen, Baltimore, Md., for defendants Eagle Cone Corp. and Maryland Baking Co.

THOMSEN, Chief Judge.

Each of the plaintiffs formerly operated a retail, drive-in, soft ice cream store in Maryland, under a franchise arrangement with one or more of the several Carvel corporations, defendants herein. Plaintiffs instituted this action on October 8, 1959, against the Carvel corporations (which will be referred to collectively herein as Carvel), claiming relief upon various grounds, including violation of the Sherman and Clayton Acts.

On July 26, 1960, plaintiffs filed an amended complaint adding as defendants Maryland Baking Company (Maryland), a Maryland corporation, and Eagle Cone Corporation (Eagle), a New York corporation, a wholly owned subsidiary of Maryland. Relief is claimed against Maryland and Eagle only under the anti-trust statutes. Eagle has moved for an order dismissing and setting aside the summons and complaint. The motion claims lack of jurisdiction over the person, insufficiency of process and insufficiency of service of process, and does not mention improper venue, but the parties agreed at the hearing that the real issue is venue, under 15 U.S.C.A. § 22, which provides: "District in which to sue corporation. Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found."[1]

■ The matter has been submitted on an oral stipulation, supported by various documents, and an affidavit of Arthur Shapiro, president of Eagle, which is to be considered by the court insofar as it is not contradicted by the stipulation. Both the stipulation and the affidavit are hazy, but the following facts are reasonably clear.

Under the franchise arrangement plaintiffs purchased cones from Carvel, which had an oral agreement with Eagle to supply such cones to Carvel's franchisees in Maryland.[2] Eagle in turn made an arrangement with its parent, Maryland, to manufacture the cones and deliver them to Carvel's franchisees in this State. Some of the cones were sup-plied on a credit basis and some on a c. o. d. basis. In either case, the shipping order bore the notation "Eagle Cone" on its face. In the credit transactions Maryland billed Eagle for the shipment; Eagle billed and was paid by Carvel; and, pursuant to its agreement with Carvel, Eagle prepared in New York an invoice which was sent by Eagle directly to the franchise dealer in Maryland, who then paid Carvel. In the c. o. d. transactions, Maryland made the delivery for the account of Eagle and received a check from the franchise dealer, payable to the order of Carvel, as directed by the shipping order; Maryland sent this check to Eagle, which in turn sent it to Carvel. Such deliveries by Maryland, on behalf of its subsidiary Eagle, were made repeatedly during the years 1957 and 1958 to the various plaintiffs. The individual orders were not large, and the total shipments to plaintiffs during a 13 or 14 month period in those years are said to have been $2,645.67. The total amount of the deliveries made on behalf of Eagle by its parent, Maryland, in this State, to persons other than plaintiffs, does not appear, but it is stipulated that the procedure outlined above has been followed until the time of the hearing.

■ The purpose of sec. 12 of the Clayton Act, codified as 15 U.S.C.A. § 22, was to enlarge the jurisdiction of the district courts to establish the venue of a suit under the antitrust laws not only where a corporation resides or is "found", but also where it "transacts business". Eastman Kodak Co. v. Southern Photo Materials Co., 273 U.S. 359, 372–374, 47 S.Ct. 400, 71 L.Ed. 684. It substituted "practical, business conceptions for the previous hair-splitting legal technicalities encrusted upon the 'found' —'present'—'carrying-on-business' sequence, * * * it relieved persons in-

---

1. If Eagle was transacting business in Maryland within the meaning of 15 U.S. C.A. § 22, the action against it is properly brought in this district and process can easily be served on it in New York if it has not already been properly served. It was my understanding at the hearing, however, that Eagle agreed to waive the question of the sufficiency of the service, reserving its objection to venue under 15 U.S.C.A. § 22.

2. Carvel had a written contract with Eagle to supply cones to its franchisees in New York, Connecticut and Massachusetts.

248

jured through corporate violations of the antitrust laws from the 'often insuperable obstacle' of resorting to distant forums for redress of wrongs done in the places of their business or residence." United States v. Scophony Corp., 333 U.S. 795, 808, 68 S.Ct. 855, 862, 92 L. Ed. 1091.

■ The test of whether or not a corporation is transacting business in a district is the practical, everyday business or commercial concept of doing business of any substantial character. United States v. Scophony Corp., supra, 333 U.S. at page 807, 68 S.Ct. 855.

■ The amount or percentage necessary to make the business substantial may vary, depending upon the context in which the question arises. In the instant case, although the dollar amount was small, the sales to plaintiffs were continuous and were made by Eagle through its parent, Maryland, as part of the general arrangement with Carvel, upon which plaintiffs' claim of antitrust violation is based. Although the mere fact of a parent-subsidiary relationship is insufficient to constitute one the agent of the other, the relationship colors and supports other facts which tend to prove that Maryland was acting as Eagle's agent.

■ A full trial of the venue issue would require proof of most of the facts which will be relevant at the trial on the merits. Not only is Eagle a wholly owned subsidiary of Maryland, they are represented by the same counsel in this proceeding. Under the circumstances, the orderly administration of justice suggests that Eagle, as well as Maryland, should be held in the case at this time, so that all of the facts may be fully developed without the possible necessity of a second trial.

The weight of the evidence submitted to this court up to this time indicates that Eagle was transacting business in this district within the meaning of 15 U.S.C.A. § 22, but the decision overruling the motion to dismiss will be subject to review on motion for summary judgment or at the conclusion of the plaintiffs' case or at the conclusion of the whole evidence, without prejudice resulting from the present ruling.

### Order

The motion to dismiss the complaint is hereby denied.